Good morning, Your Honor. We've now switched tables, you'll see. I'm Robert Shriver. I'm Assistant Counsel with the National Treasury Employees Union. I'm going to try to reserve two minutes of my time for rebuttal, depending on how the questioning goes here. This case concerns whether the agency, the U.S. Customs and Border Protection, provided explicit notice to the union of an attempt to revoke a contract provision that said that when an issue arises that requires bargaining and that issue affects only a single port, the bargaining will take place at the local level. The Federal Labor Relations Authority has held that Section 3 of a document called the Revised National Inspectional Assignment Policy constitutes the requisite explicit notice of revocation of that contract provision. And in another case, the D.C. Circuit has affirmed the authority's rationale. Another case by the same name? Another case by the same name dealing with the same kind of issue, a mid-term bargaining obligation. Tell me why we should create a conflict with our sister circuit on this issue. Your Honor, the D.C. Circuit was wrong to affirm the authority's decision because the authority's decision is unreasonable and contrary to its own precedent. And there are also two specific aspects of the D.C. Circuit's decision that I'd like to highlight, but I think the main point here is that the authority's decision is unreasonable because it construed Section 3 of RNAI Act to mean something other than what it says and something other than what CBP intended it to say and then used that to hold that the union had waived its statutory bargaining rights. What does that mean in English? What that means in English, Your Honor, is that Section 3 of RNAI Act reflects CBP's intention to foreclose all mid-term bargaining over inspectional assignment matters. Under CBP's view, there should be no more mid-term bargaining over those things. The authority said they can't do that. Section 3 cannot be given that legal effect, that the union has a statutory right to this mid-term bargaining. Where the authority erred was then in taking the additional step of saying, okay, CBP, we know that they could have revoked their agreement to bargain locally because that's a permissive subject, so we are going to read Section 3 as doing just that, meaning that all bargaining disputes arising mid-term affecting only one port would now be funneled to the national level. There was no way when this bargaining dispute arose for the union to understand that that's what the interpretation would be. You have to go back, Your Honor, to November and December of 2002. Well, they said no further obligation to negotiate. That's right. None at all. They don't address what the consequences of the authority's decision, which is that they do have an obligation to bargain. That raises a second question, a separate question, about the level at which that bargaining will take place. And they should have looked to the party's contract at that point because there's nothing in Section 3 that addresses the level of bargaining if CBP is wrong and could not foreclose all mid-term bargaining as the authority found. Now, let me once again, Your Honor, take you back to November, December of 2002. At that time, we don't have the benefit of these FLRA decisions. What we have then is a long history of the parties bargaining locally over issues affecting only one port. We also have a history of the parties bargaining over the subjects that are set forth in 7106b1 of the Labor Statute. Now, the level of bargaining is not a 7106b1 subject, okay? CBP issued RNIAP in August of 2001 because it no longer wanted to bargain over the 7106b1 matters. That's plain from the RNIAP itself and from the cover letter that CBP sent to the union on August 2nd. That cover letter says we're not going to bargain over 7106b1 matters and we're going to terminate any agreements that we have to bargain over 7106b1 matters. Then it went on to list specific contract provisions that it was going to terminate. And it did not list Article 37, Section 6b, which is its agreement to bargain locally over matters affecting only a single port. So, in November and December of 2002, you have a history of bargaining locally. You have CBP saying we're not going to bargain over 7106b1 matters. And then, consistent with the parties' bargaining relationship, you have the local port director approaching the local NTEU chapter and providing advance notice of a change in the shifts, the work shifts that affects only that port, the Seattle-Tacoma Airport. At that point, what the local president was facing was that CBP was saying it didn't have to bargain at all midterm. We were saying you do have to bargain. You can't waive our statutory rights. So he acted very reasonably in requesting bargaining at the local level, consistent with the party's long practice. Counsel, a big question for me, if I could just interrupt for a moment. Yes. Is the you lost at the agency level. And a big question to me is how much deference we owe to that agency. What is our standard of review here? This is a traditional APA standard of review, Your Honor. So it's a narrow, there's a narrow authority for the appellate court. But we would argue here that we're an abuse of discretion. Is that correct? Yes. And the way that that's been construed in FLRA cases is, number one, the court does not defer to unreasonable FLRA decisions. And number two, it does not defer to FLRA decisions that are contrary to its own precedent. Let me discuss if I might. At the same time, if it's reasonable, although we would have had a different reasonable conclusion, in other words, we could disagree with it and say, no, if we were an agency, we would have decided that way. We've got to determine that what they did was unreasonable. Yes, Your Honor. So you can't argue to us that what you've got to show that what they did was capricious, arbitrary. It was, Your Honor. It was capricious and arbitrary to hold that the union waived its bargaining rights based on Section 3, which it construed to mean something completely different than what it said, which CBP, by the way, did not intend it to mean. There's testimony in the record here, and all the parties can agree, that CBP did not intend to rescind Article 37, Section 6B. What it intended to do was to foreclose all bargaining. It's unreasonable for the authority and really inconsistent with the whole reason that they have this explicit notice requirement for it to read Section 3 one way and then construe it as a waiver of bargaining rights. I mean, the idea here is that the parties understand what the rules are. That's why there's an explicit notice requirement. Here, the union couldn't have understood what those rules are. We acted the best way that we could. You know, we requested bargaining at the local level. And for that action to be held to have somehow waived our statutory bargaining rights, it's inconsistent with the FLRA's rule. And let me also mention, Your Honor, because it's clear that if the authority acts contrary to its own precedent, its decision should be reversed. If you look at the facts of the Bureau of Prisons case, which we cite prominently in our briefs, you'll see that there the operations memo that was issued by the agency was not considered explicit notice. And if it couldn't be explicit notice there, then Section 3 of our NIOP can't be considered explicit notice here. Yeah, but it didn't specifically mention bargaining obligations in the Bureau of Prisons. What the Bureau of Prisons case addressed was the overlapping shift times. And what happened was there was a local agreement that established shift starting and stopping times at the Federal Correctional Institute in Danbury. And the agency had been incurring over time a liability, and so — Well, I mean, the whole thing is that it didn't specifically mention bargaining, and so it wasn't sufficient to repudiate their prior agreement. It's not an issue of whether it specifically mentioned bargaining. It's whether it specifically mentioned the local supplemental agreement establishing shift times that were in conflict with the overlapping shift starting and ending times that the agency wanted to establish at a national level. So what happened there is the court said, okay, maybe if the union put these documents together, it would have understood that that's what happened, that its local agreement had been superseded because the agency wanted to create this national overlapping shift policy. But the union shouldn't be required to infer or guess what the party's intention was. And that's what they had to do there, and that's what we had to do here. And that's not right. We have about a minute left. Thank you, Your Honor. Thank you for your rebuttal. We'll hear from the other side. Mr. Blanford, you couldn't stay away. Couldn't stay away. It's a doubleheader, Your Honor. Good morning, and may it please the Court again. In this case, it's undisputed that Customs was privileged to terminate its obligation to bargain inspectional assignment matters at the local level. The only question is whether Section 3 of the revised NIAAP accomplished that. The authority held that it did, and that was a decision upheld by the D.C. Circuit. And, yes, Judge, I understand you may disagree with the D.C. Circuit, but in this case, you shouldn't because the D.C. Circuit as well as the authority got it right. Well, we can disagree, although, of course, it is always something we have to think carefully about taking disagreements with the D.C. Circuit, for one thing, because it creates potential for the Supreme Court, you know, puts a possibility for the Supreme Court perhaps to resolve the conflict. So we don't do it lightly in this case or another case either. I understand. And it is, after all, a court of appeals that considers a wealth of administrative matters, and we have to take that into consideration, don't we? Yes, Your Honor. I think, you know, the D.C. Circuit got it right, and this Court should reach the same opinion. Why can't we say the D.C. Circuit was resolving a question of fact, I mean, from the administrative agency, and here the administrative agency was resolving a question of law, as your friend across the aisle puts it? The D.C. Circuit decision and the cases were identical. The identical issues were presented. The only difference is there the assignment changes occurred in, I think, El Paso and here in Seattle. But it's the identical issues. They're both questions of fact and law. A couple of things. With respect to the argument that we were inconsistent with our own precedent, that's simply wrong. The precedent, the Bureau of Prisons case, simply says that the notice with respect to exercising the privilege of repudiating local bargaining has to be clear. It has to be such that the parties are on notice as to their rights and obligations that there's no confusion. Obviously, that's a case-by-case determination. And in this case, the authority reasonably found that the notice was sufficient. The language was absolutely plain in the Section 3 of the revised NIAP, and as the union concedes, both in their brief and here, they understood that the result of Section 3 was no more bargaining. That's what they were being notified as. As it turns out, the authority found that Customs overstated its privilege, perhaps. But that overstatement of the privilege doesn't negate the privilege as far as it goes. And they were privileged to repudiate local bargaining. And I think that's important. Counsel for the union keeps talking about whether or not this is a waiver of union rights. This is about a waiver of union rights. It's about the agency exercising a legal privilege that it had to eliminate local bargaining over inspection matters. If there are no more questions, Your Honor, we rely on our brief. And I'll give my colleague from the Department of Justice his time. Howard Scherr, Jr. May it please the Court, I'm Howard Scherr from the Department of Justice, and I represent Customs and Border Protection. I just want to say, to clarify for the Court, and I still think the union misses this, what the revised inspectional policy said was, when it was introduced, was this is a proposal, let's negotiate over it. And the union came back with a response to negotiate over some ground rules. But we were never saying you are waiving your rights. We were essentially saying that this revised policy will now eliminate local bargaining over local issues, that hereon after, with respect to the matters contained in the revised policy, we will negotiate at the national level. But then there was no negotiation. And that once this revised inspectional policy became implementable, which the D.C. Circuit sustained in the 414F3rd case, then it was the law with respect to the parties over the matters contained therein. Then in the 453F3rd case, the D.C. Circuit upheld, at least in that context, that there would be no local bargaining over the issues contained in the revised inspectional policy because the revised inspectional policy, in fact, gave notice that that was the end of local bargaining. It's the same issue that's presented here. So you progressed from 414F3rd in the D.C. Circuit that this is a lawfully implemented proposal to 453F3rd saying, yes, it lawfully cut off local bargaining. That's all that's at issue here right now, local bargaining. And we think for the same reason the D.C. Circuit upheld the authority's decision in the 453F3rd decision, this Court should do so here. We only wanted to make sure the Court was aware that we had an additional basis which we argued below, that if the Court were in disagreement with the authority over this, but we think the Court should not be in disagreement with the authority's rationale here, that a remand for entrance of a ULP was improper, that there were other issues that the Court or the FLRA should reconsider, namely, this covered by doctrine. We think the only issue we think, relating to that, that we should bring to your attention here is the union's contention that we did not raise it below. We think it's clearly raised, in our view, at pages 14 of the excerpt of record where the authority identifies our arguments, at pages 19 to 21 of the concurrence's decision in the authority decision, and the ALJ excerpt of record page 43, and then we provided the Court with a supplemental excerpt of record of our agency opposition to the exceptions raised, and at pages 4 to 6, we discuss the covered by and contained in or takes precedence arguments. So we think the Court should affirm the decision of the authority for the same reasons the D.C. Circuit did. Thank you. You have a minute for rebuttal. Just a couple of brief points, Your Honor. First, counsel for the FLRA says this case is not inconsistent with Bureau of Prisons because all that the Bureau of Prisons case did was establish these general standards. We're arguing that it's inconsistent with Bureau of Prisons because, under the facts of that case, the operations memo relied upon by the agency was construed not to meet the explicit notice requirement. And there, they had a much better argument than the agency has here. So there's no way that the facts of this case can be reconciled with the facts of that case, and that's where the D.C. Circuit erred, Your Honor. It didn't even, nor has the authority ever attempted to reconcile why the explicit notice requirement was not satisfied in the Bureau of Prisons case, but that it is here. My second point, Your Honor, is that this is a waiver question, and the reason that it's a waiver question is because since the union requested bargaining at the local level and the authority has held that it couldn't, it's been deemed to have waived its bargaining rights over not only this issue, but countless other special assignment issues that have arisen in the interim. Thank you, Your Honor. Thank you, Counsel. The case is argued and will stand submitted. The final case on the calendar is Vision Service Plan v. United States. Thank you, Your Honor. Thank you, Your Honor.
judges: Kozinski, Hawkins, Cowen